BUCHALTER
A Professional Corporation
GABRIEL G. GREEN (SBN: 222445)
TIA M. GONZALEZ (SBN: 338988)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400
Email: ggreen@buchalter.com
Email: tgonzalez@buchalter.com

Attorneys for Plaintiff,
HILLCREST PROPERTIES, LLC

# UNITED STATES DISTRICT COURT FOR THE

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILLCREST PROPERTIES, LLC, an Alaska Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES POSTAL SERVICE,<br><br>Defendant. | CASE NO. **'23 CV 1356 TWR BLM**<br>Assigned to Honorable<br><br>**COMPLAINT FOR:**<br>**(1) BREACH OF CONTRACT**<br>**(2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**(3) UNJUST ENRICHMENT**<br>**(4) DECLARATORY JUDGMENT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Hillcrest Properties, LLC ("Plaintiff" or "Hillcrest Properties"), by and through its attorneys, brings this action against Defendant United States Postal Service ("Defendant" or "USPS"), and alleges as follows:

## INTRODUCTION

### The USPS' Exploitive Holdover Tenancy

1.     This case stems from USPS' flagrant exploitation of its position as a quasi-governmental agency that has received judicial protection from eviction proceedings. Recognizing that Plaintiff's legal rights as a landlord are limited, USPS willfully breached its lease with Plaintiff by refusing to vacate the premises at the conclusion of the tenancy. Thereafter, USPS caused further harm and damages to Plaintiff by failing to pay the fair market rental value for USPS' holdover tenancy.

2.      For the past year, Plaintiff has engaged in numerous good faith efforts to work with USPS to obtain either USPS' voluntary abandonment of the property or re-negotiation of a new lease for USPS' continued use of the property. USPS has completely failed to act in good faith and instead has refused to engage in any meaningful negotiation with Plaintiff. Left with no other choice, Plaintiff is forced to seek appropriate judicial relief in this Court.

*The Subject Property*

3.      The property at issue is in the highly desirable San Diego neighborhood of Hillcrest. The property is located at 3911 Cleveland Avenue, San Diego, CA 92103 (hereinafter, the "Property"). USPS' lease for the Property, which commenced back in August 1972, expired on its own terms on July 31, 2022, following which USPS refused to vacate the Property. USPS continues to remain in possession of the Property as a holdover tenant.

4.      Notwithstanding the fact that USPS benefited for more than fifty (50) years occupying the Property at significantly under-market rental rates, which were negotiated many, many years ago, USPS has refused to pay the current fair market rental rates for the Property following the natural expiration of the lease. USPS instead seeks to misuse its unique position as a quasi-governmental agency to force Plaintiff to accept substantially less than fair market rent for the Property. USPS' conduct is improper and should not be countenanced by this Court.

*Increased Monetary Damages Are Owed*

5.      Under existing case law, given that Plaintiff cannot presently evict USPS from the Property, Plaintiff is entitled to a monetary judgment for the full amount of the current fair market rental value for the Property (i.e., $63,315.08/month) plus a premium in the amount of thirty (30%) percent above that current fair market rental value for the entire period that USPS remains as a holdover tenant – i.e., until USPS vacates the Property or enters into a new lease with Plaintiff

**COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

at the current fair market value for the Property. *See, Nationwide Postal Mgmt. v. U.S. Postal Service,* PSBCA No. 6645 (May 6, 2019).

## JURISDICTION AND VENUE

6.    Pursuant to the Postal Reorganization Act of 1970, 39 U.S.C. § 101, Congress "waive[d] the immunity of the Postal Service from suit by giving it the power to "sue and be sued in its official name." *U.S. Postal Service v. Flamingo Indus. (USA) Ltd.,* (2004) 540 U.S. 736, citing 39 U.S.C. § 401.

7.    This Court also has jurisdiction over this action pursuant to 39 U.S.C. §409(a), which states, "the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service."

8.    While the Contracts Dispute Act, 41 U.S.C. §§ 7101-7109 ("CDA") grants the United States Court of Federal Claims exclusive jurisdiction over express or implied contracts made by an executive agency, the CDA does not divest this Court of jurisdiction here because the lease at issue was entered into before the enactment of the CDA. Indeed, because USPS and Plaintiff's predecessor-in-interest entered into the lease on August 15, 1972, which was before the enactment of the CDA, Plaintiff has the choice of seeking relief pursuant to either the CDA or the Postal Reorganization Act (39 U.S.C. § 409(a)), which allows for claims to be brought in Federal Court. *See Nationwide Postal Mgmt. v. U.S.*, No. 98-CV-401 RNC, 2000 WL 502619 (D. Ct. 2000); *Spokdek v.U.S. Postal Serv.,* 35 F.Supp.2d 160, 164 (D. Mass. 1999); *Jackson v. U.S. Postal Serv.,* 799 F.2d 1018 (5th Cir. 1986).

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this claim occurred in this jurisdictional district, to wit: the subject property is located within the Southern District of California.

///

///

**THE PARTIES**

10.     Plaintiff Hillcrest Properties, LLC, is a limited liability company organized and existing under the laws of the State of Alaska, with its principal place of business located at 16931 Maplewild Avenue, SW, Burien, WA 98166.

11.     Defendant United States Postal Service, is an independent establishment of the Executive Branch of the United States Government with offices at 475 L'Enfant Plaza, SW, Washington, D.C. 20260-1101.

**FACTUAL BACKGROUND**

*The Lease*

12.     On August 15, 1972, Plaintiff's predecessors-in-interest, Joseph Penner and Grace Penner, entered into a lease agreement with the USPS for the Property (the "Lease"). A true and correct copy of the 1972 Lease is attached as **Exhibit 1**.

13.     Thereafter, on July 25, 1981, the parties entered into an amendment of the Lease (the "1981 Lease Amendment"), which extended the term of the Lease by granting USPS another six periods whereby the USPS could renew and extend the Lease for the Property. A true and correct copy of the 1981 Lease Amendment is attached as **Exhibit 2.**

14.     USPS renewed under the terms of the 1981 Lease Amendment for each time period, with the final renewal period ending on July 31, 2022.

15.     In addition to providing for the six renewal periods for the extension of the Lease, the 1981 Lease Amendment also granted USPS with an option to purchase the Property, provided that USPS exercised such option prior to the expiration of the Lease (the "Option to Purchase").

16.     Specifically, Paragraph 6 of the 1981 Lease Amendment provided, "By execution of this amendment, the lessor hereby grants the Postal Service an option to purchase the fee simple title to the leased premises at any time during the remaining terms of the lease, including the term of any lease renewal options subsequently

exercised, by providing written notice of the exercise of the option to purchase to the lessor."

17.    That same Paragraph 6 of the 1981 Lease Amendment further provides that, "The purchase price will be at the fair market value of the premises at the date of the exercise of this option, unencumbered by the Postal Service lease, as determined by Postal Service appraisal. If the lessor disagrees with the Postal Service appraisal, the lessor shall have a period of one hundred twenty (120) days to obtain an appraisal at the lessor's expense. Thereafter, the parties will attempt to negotiate a final purchase price. If agreement on price cannot be reached, the purchase price will be determined by an appraiser selected by the lessor from a list of three appraisers furnished by the Postal Service. Each of the three appraisers must be a designated appraiser of a recognized national professional appraisal organization or society. The cost of the third appraisal will be equally shared between the lessor and the Postal Service."

18.    In 2012, Hillcrest Properties, LLC obtained legal title to the Property.

19.    On April 23, 2004, USPS signed another amendment to the Lease (the "2004 Lease Amendment"). A true and correct copy of the 2004 Lease Amendment is attached as **Exhibit 3**.

20.    The 2004 Lease Amendment did not change the term of the Lease; it simply concerned the replacement of the elevator jack/cylinder and related piping at the Property.

21.    Importantly, the 2004 Lease Amendment expressly provided that, "In all other respects, the Lease shall remain the same and is hereby confirmed."

22.    On or about June 30, 2009, USPS signed a third lease amendment (the "2009 Lease Amendment"). A true and correct copy of the 2009 Lease Amendment is attached as **Exhibit 4**.

///

///

23.     The 2009 Lease Amendment likewise did not change the term of the Lease. Instead, 2009 Lease Amendment simply concerned Plaintiff's agreement to replace the roof at the Property.

24.     Once again, the parties re-affirmed the original Lease terms by expressly agreeing in the 2009 Lease Amendment that, "In all other respects, the Lease shall remain the same and is hereby confirmed."

***USPS Initially Attempts to Exercise the Option to Purchase***

25.     As the end of the lease term drew near, the USPS, in a letter dated June 1, 2022, notified Plaintiff that USPS was exercising the Option to Purchase. A copy of the USPS' June 1, 2022 letter purporting to exercise the Option to Purchase is attached hereto as **Exhibit 5.**

26.     However, the USPS did not properly exercise that Option to Purchase because it failed to provide an appraisal that met the standards required by the 1981 Lease Amendment.

27.     Moreover, the appraisal that USPS did provide grossly undervalued the Property – absurdly setting an appraised value of only $3.8 million for a 1.03 acre lot, zoned for Residential – Multiple Units, in the heart of the highly desirable neighborhood of Hillcrest.

28.     Notwithstanding the USPS' failure to properly exercise the Option to Purchase, Plaintiff, in a good faith effort to work with USPS, hired its own appraiser to prepare an appraisal of the Property.

29.     Unlike the individual that USPS used to create its substantially deficient appraisal to grossly undervalue the Property, the independent appraiser that Plaintiff hired was properly licensed and certified as, *inter alia*, a MAI and SRA appraiser.

30.     The appraiser hired by Plaintiff assessed the value of the Property as $10.7 million – nearly $7 million more than the appraised value provided by Defendant's non-certified appraiser.

31.     On July 29, 2022, USPS notified Plaintiff that it intended to remain on the Property as a holdover tenant and unilaterally attempted to set its holdover rental rate at a substantially under-market amount based on the invalid appraisal that USPS had prepared by an uncertified and unqualified appraiser who was not even from San Diego.

32.     Plaintiff's counsel immediately responded to the USPS' missive and made clear that the USPS' holdover tenancy rental rate would be at the current fair market value for the Property, which was at an annual rate of $759,781. A true and correct copy of the email exchange between Plaintiff's counsel and the USPS, on July 29, 2022, relating to that subject is attached hereto as **Exhibit 6.**

33.     USPS, however, failed to tender a rental payment for the current fair market value for the Property.

34.     Instead, USPS tendered a rental payment for the significantly reduced, under-valued rental rate that it calculated based on the invalid appraisal that USPS had its unqualified, out of market appraiser prepare.

35.     Plaintiff rejected USPS' deficient rental payment and did not cash the USPS' check.

36.     On August 29, 2022, Plaintiff sent a letter to the USPS forwarding a copy of the fair market value appraisal that had been prepared by the independent, certified appraiser that Plaintiff engaged. A true and correct copy of that August 29, 2022 Letter, with the enclosed independent appraisal, is attached as **Exhibit 7.**

37.     The USPS failed to respond to Plaintiff's August 29, 2022 Letter.

38.     The USPS also continued to fail to tender rental payments for the current fair market rental value for the Property.

39.     On November 3, 2022, Plaintiff sent another letter to the USPS, which addressed: (1) USPS' failure to respond to the August 29, 2022 Letter, (2) Plaintiff's rejection of USPS' underpayment of rent and the fact that the USPS was in arrears on rental payments because the payments tendered are below fair market value, and

(3) requesting confirmation as to the USPS' intentions to negotiate the purchase price of the Property at the fair market value determined by the independent appraisal that Plaintiff forwarded on August 29, 2022. A true and correct copy of the Plaintiff's November 3, 2022 Letter is attached as **Exhibit 8**.

40.     On March 3, 2023, USPS advised in a phone call, which was thereafter confirmed in an email sent that same day, that USPS was no longer interested in purchasing the Property. A true and correct copy of the USPS' email, dated March 3, 2023, confirming that the USPS was no longer pursuing its Option to Purchase is attached as **Exhibit 9**.

41.     In that same call on March 3, 2023, USPS advised that it intended to pursue negotiations with Plaintiff for a new lease for the Property.

42.     The USPS representative, Shirley Wheeler, acknowledged Plaintiff's position that the USPS' prior rental payments during its holdover tenancy was not at the current fair market rate.

43.     Ms. Wheeler, however, indicated that USPS could not increase its rental payments until it secured a new appraisal for the Property, but assured Plaintiff that USPS would be obligated to pay Plaintiff for any additional amounts that it deemed would be owed based on deficiencies with its prior rental payments during the holdover tenancy.

44.     Notwithstanding that representative's assurances, USPS has failed to provide Plaintiff with a new appraisal for the Property, has failed to make any effort to negotiate a new lease for the Property, and continues to remain in possession of the Property as an unauthorized, holdover tenant that fails to pay the current fair market rental value for the Property.

45.     On May 3, 2023, Plaintiff again followed-up with USPS via email inquiring as to the status of the USPS' promised proposal for a new lease.

46.     While USPS' representative, Ms. Wheeler, responded that same day, the response was elusive and failed to provide Plaintiff with any assurances as to when

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

it could expect resolution of the outstanding issues with regard to USPS' holdover tenancy. A true and correct copy of that email exchange on May 2, 2023 is attached hereto as **Exhibit 10**.

47.    As of July 25, 2023, USPS remains a holdover tenant at the Hillcrest Property.

48.    As of July 25, 2023, USPS has made no efforts to pay the fair market value of the rent.

**FIRST CAUSE OF ACTION**

**(Breach of Contract)**

49.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 48 inclusive, of the Complaint as if those allegations were fully set forth herein.

50.    Plaintiff entered into a valid Lease, which is a contract, with Defendant on August 15, 1972 for the Postal Service to occupy the Property for a set term. The Parties entered into certain amendments to the Lease, as set forth above, and the Lease and its amendments collectively hereinafter are referred to as the "Lease Agreement."

51.    The Lease Agreement included an Option to Purchase provision allowing Defendant to purchase the Property. In order to exercise the Option to Purchase, the United States Postal Service was required to satisfy certain requirements, including having the Property appraised by a certified appraiser.

52.    Defendant breached its duties under the Lease Agreement by failing to satisfy the requirements under the Option to Purchase. In violation of the terms of the Lease Agreement, USPS had the Property appraised by an individual that was not a MAI, SRA, or other nationally recognized certified appraiser. Defendant's appraiser also was not from the San Diego area and thus was not qualified to make a fair market valuation of the Property.

53.    After Plaintiff obtained a fair market valuation of the Property from a

MAI and SRA certified appraiser who was qualified to render an appraisal of the Property, Defendant advised Plaintiff that it had decided to abandon the Option to Purchase and notified Plaintiff that USPS was no longer interested in purchasing the Property.

54.     After exercising all available renewal options and electing to not purchase the Property, the lease ended on July 31, 2022. Defendant also breached the Lease Agreement by refusing to vacate the Property. Instead USPS remains a holdover tenant, in violation of the Lease Agreement.

55.     Defendant further breached the Lease Agreement by refusing to pay the fair market rental rate for the Property.

56.     Defendant remains in possession of the Property knowing that it holds a protected status as a quasi-governmental agency and that Plaintiff is unable to evict Defendant in the normal course. Plaintiff has no idea if or when Defendant will vacate the property – forcing Plaintiff to face much uncertainty with regard to the status of their Property.

57.     As a direct and proximate result of Defendant's breaches of the Lease Agreement, Plaintiff has suffered damages for Defendant's refusal to pay the fair market annual rate for the Property of $759,781, which is a monthly rental rate of $63,315.08 per month.

58.     In addition, Defendant's refusal to negotiate a new lease has placed Plaintiff in a precarious position – at the whim of USPS, with no way to know if it should be searching for a new tenant or if Defendant will negotiate a new lease at the fair market rate. This uncertainty entitles Plaintiff to a thirty percent (30%) premium on the fair market annual rate for the Property.

///

///

///

///

**SECOND CAUSE OF ACTION**

**(Breach of Implied Duty of Good Faith and Fair Dealing)**

59.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 58 inclusive, of the Complaint as if those allegations were fully set forth herein.

60.     As with every contract, the Lease Agreement at issue here contains the implied covenants of good faith and fair dealing. Defendant covenanted to not act unfairly so as to deprive Plaintiff Hillcrest Properties, LLC of the benefits of the Lease Agreement.

61.     Defendant USPS breached its duty of good faith and fair dealing by failing, without excuse or justification, to perform their duties under the Lease Agreement. Defendant is well aware of its protected status and, as such, attempted to railroad Plaintiff into accepting less rent for the holdover tenancy than that amount for which Defendant was, and remains, obligated to pay for its holdover tenancy.

62.     Moreover, the Lease Agreement clearly identified the obligations under the Option to Purchase, which Defendant ignored, but attempted to exploit to cause further financial harm to Plaintiff.

63.     Additionally, Defendant continues to financially harm Plaintiff by remaining in possession of the Property for more than a year after the Lease Agreement expired on its own terms but failing to pay the fair market rental value for the Property.

64.     Defendant's refusal to satisfy the requirements to get the Property appraised by a certified appraiser and subsequent decision to remain in possession of the Property despite not having a valid lease are contrary to the covenants of good faith and fair dealing implied in the Lease Agreement.

65.     Likewise, Defendant's continued refusal to pay rent at the fair market rental value violates the implied covenants in the Lease Agreement.

66.    Defendant's actions are particularly egregious because Defendant has known all along that it cannot be evicted through the usual unlawful detainer eviction process. Defendant is not willing to purchase the Property, is not willing to vacate the Property, and not willing to negotiate a new lease. Plaintiff has surely been deprived the benefits of good faith and fair dealing.

67.    As a direct and proximate result of Defendant's breach of the covenants of good faith and fair dealing, Plaintiff Hillcrest Properties, LLC has sustained damages equal to the amount of the fair market rental rate that Defendant USPS has withheld, and all other such costs and fees.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)

68.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 67 inclusive, of the Complaint as if those allegations were fully set forth herein.

69.    Plaintiff is informed and believes and on that basis alleges that Defendant USPS refused to vacate the Property and return possession of said Property to Plaintiff.  Additionally, during the period of holdover tenancy, Defendant USPS paid below market rent for a period of at least twelve (12) months and counting.

70.    The Lease ended on July 31, 2022. Defendant USPS, however, continues remain in possession of the Property but refuses to pay the current market value rate for USPS' holdover tenancy, which is $63,315.08 per month.

71.    Defendant USPS is unjustly enriched by continuing to remain in possession of this highly valuable Property while failing to pay the fair market rental value for that Property.

72.    Plaintiff has been significantly damaged as a result of Defendant's holdover tenancy as Plaintiff is unable to evict Defendant from the Property due to Defendant's status as a quasi-governmental agency but likewise is not receiving

compensation for the fair market rental value of the Property. Defendant is improperly exploiting its position as a quasi-governmental agency to oppress and financially harm Plaintiff.

73.    Plaintiff is entitled to, and hereby seeks, a judgment for the full amount of fair market rent that is owed during the entire period of Defendant's holdover tenancy.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment)

74.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 73, inclusive, of the Complaint as if those allegations were fully set forth herein.

75.    USPS informed Hillcrest Properties, LLC on March 3, 2023 that USPS did not intend to continue with purchase negotiations for the Property

76.    USPS' rights under the Lease Agreement to purchase the property has expired.

77.    The renewal options under the Lease Agreement have also expired.

78.    USPS had a duty to exercise *and satisfy* the Option to Purchase the Property, to negotiate a new lease, or to vacate the Property.

79.    The Lease expired on July 31, 2022.

80.    USPS owes Hillcrest Properties, LLC the fair market rental rate for the Property from the time the Lease Agreement ended on July 31, 2022 until USPS vacates and returns possession to Hillcrest Properties, LLC.

81.    USPS owes Hillcrest Properties, LLC a premium equal to 30% over the fair market rental rate due to the uncertainty USPS created as a holdover tenant.

82.    Plaintiff is also entitled to a declaratory judgment that Defendant cannot continue to remain in possession of the Property without paying for the full fair market rental value for that Property.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.      An order finding that Defendant has breached the Lease Agreement.

2.      An order finding that Defendant has breached the covenant of good faith and fair dealing implied in the Lease Agreement.

3.      An order finding that Defendant has been unjustly enriched.

4.      An award for the full amount of the fair market rental value owed during USPS' holdover tenancy, which is $759,781 on an annual basis and $63,315.08 on a monthly basis.

5.      An award for an additional thirty (30%) percent premium above that current fair market rental value for the entire period that USPS remains as a holdover tenant – i.e., until USPS vacates the Property or enters into a new lease with Plaintiff at the current fair market value for the Property. *See, Nationwide Postal Mgmt. v. U.S. Postal Service,* PSBCA No. 6645 (May 6, 2019)

6.      A judicial declaration that:

   (a)      The Lease Agreement expired on July 31, 2022;

   (b)      USPS is currently an unauthorized holdover tenant;

   (c)      The Option to Purchase has now expired;

   (d)      USPS' rights to renew the Lease have expired;

   (e)      USPS' rights to purchase the Property has expired;

   (f)      USPS is obligated to pay the fair market rental amount for the entire time of its holdover tenancy at a rate of $759,781, per annum, which is a rate of $63,315.08, per month;

   (g)      USPS, additionally, is obligated to pay a thirty (30%) percent premium on the fair market rental amount that it owes Plaintiff for USPS' holdover tenancy;

///

///

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

14
**COMPLAINT**

1           (h)    Within sixty (60) days, USPS must either negotiate a new lease

2    with Plaintiff or, if it fails to do so or is otherwise unable to agree to terms suitable

3    to Plaintiff, then vacate the Property.

4         7.    For costs of suit herein incurred;

5         8.    For such other and further relief as the court may deem proper.

6

7

8    DATED: July 26, 2023          BUCHALTER
                              A Professional Corporation

9

10                         By: _____

11                            GABRIEL G. GREEN
                              TIA M. GONZALEZ

12                            Attorneys for Plaintiff
                              HILLCREST PROPERTIES, LLC, an

13                            Alaska Limited Liability Company

14   BN 76970116

15

16

17

18

19

20

21

22

23

24

25

26

27

28